Lan Ngoc NGUYEN, Appellant,

v.

Dinh Duc NGUYEN, Appellee.

No. 01–09–00421–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 24, 2011.

Rehearing and Rehearing En Banc
Overruled June 1, 2011.

Trang (Duncan) Thien Pham, Houston, TX, for Appellant.

Jay Robert Brandon, San Antonio, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Lan Ngoc Nguyen ("Lan"), sued Dinh Due Nguyen ("Dinh") for divorce. After answering and filing a counter-petition for divorce, in which he admitted that he was married to Lan, Dinh moved for declaratory judgment pursuant to the Texas Uniform Declaratory Judgments Act ("UDJA"), seeking a declaration that he never married Lan because he had married Pham Kim Nguyet ("Pham") in Vietnam approximately eight months before the alleged ceremony to Lan. After a bench trial, the trial court ruled that Lan and Dinh had never married. In two issues on appeal, Lan contends that Dinh did not present legally and factually sufficient evidence to support the trial court's finding of fact that Lan and Dinh had never informally married "due to the impediment of [Dinh's] prior marriage."

We reverse and remand.

## Background

Lan met Dinh in 1995 when she started working in his chiropractic clinic, and they eventually began dating. Dinh traveled to Vietnam in February 2000, where he allegedly married Pham on February 18. Although Dinh returned to the United States shortly thereafter and Pham remained in Vietnam, Dinh testified that he and Pham never divorced and he "[s]trongly consider[ed]" Pham to be his wife.

Lan testified that after Dinh returned from Vietnam, he told her that he had become engaged to Pham, but he had

called off the marriage to Pham because he wanted to marry Lan. The trial court admitted a picture taken at the February 2000 ceremony in Vietnam of Dinh and Pham standing under a banner that read "Dinh Hom." Lan testified that, in Vietnamese, "Dinh Hom" means "engagement."

According to Lan, Dinh proposed to her a few months after he returned. Lan testified that she and Dinh had a traditional Vietnamese wedding ceremony on October 7, 2000. Dinh disputed the characterization of the ceremony as a "wedding," although he admitted that Lan sent invitations for a "wedding ceremony," that they dressed formally, that they exchanged rings, that they had a wedding cake, and that they danced together at this ceremony.[1] Lan stated that a Vietnamese "Master of Ceremonies" officiated and announced that Lan and Dinh were married.[2] Lan testified that, after the ceremony, she believed that she and Dinh were married and that Dinh often introduced her to others as his wife. Dinh stated that he had "occasionally" told others that Lan was his wife, but he then immediately testified to the contrary and stated that he had never introduced Lan as his wife. Although Lan and Dinh filled out an application for a marriage license, in which Dinh stated that he was not married to another, it is undisputed that the Harris County Clerk's Office never issued a marriage license to the couple.

Lan testified that she moved in with Dinh, and they lived together as husband and wife. Dinh named Lan as his spouse on an insurance application, and she named "[her] husband" as her life insurance beneficiary. On cross-examination, Lan agreed that she had listed her marital status as "single" on her federal income tax forms and on loan applications to purchase a home and a car, but she stated that Dinh had told her to write that she was single on these forms.

Lan and Dinh lived together until 2003, when they separated for approximately two years. Lan testified that they reconciled in 2005 and that they lived together until December 2007, when Dinh kicked Lan out of their house. Lan filed for divorce on December 10, 2007.

Dinh answered Lan's petition, asserting a general denial and the affirmative defenses of fraud and release. Dinh also filed a counter-petition for divorce, in which he stated that "[t]he parties were married on or about November 1, 2005 and ceased to live together as husband and wife on or about December 8, 2007." Dinh attached a copy of a premarital agreement, executed by himself and Lan on September 12, 2000, which stated that "[t]he parties plan to marry each other, and intend to provide in this agreement for their property and other rights that may arise because of their contemplated marriage." Both Lan and Dinh initialed each page and signed the document.

Dinh later amended his answer and once again generally denied Lan's allegations. Dinh also "denie[d] that the parties were ever married, either ceremonially or through the application of common law, and [he] affirmatively assert[ed] that [Lan] is attempting to perpetrate a fraud upon this court with allegations that the parties are man and wife." Dinh further amended his counter-petition to state that the parties had never married.

1. Dinh repeatedly testified that Lan "forced" him to send the invitations and "nagg[ed]" him into buying rings and having a ceremony.

2. Lan conceded that the ceremony was not performed by a religious official or a judge.

Dinh simultaneously moved for a declaratory judgment under the UDJA, seeking a declaration that no marriage existed between Lan and him. Dinh denied the existence of a marriage, and argued that Lan could not prove the elements of either a valid ceremonial or a valid informal marriage. Dinh did not contend in this motion that he could not have validly married Lan because he had previously married Pham and that marriage continued in existence.

At the bench trial on Dinh's declaratory judgment motion, the trial court heard evidence regarding whether a marriage existed between Dinh and Pham. Dinh testified that he and Pham participated in a formal wedding ceremony in Saigon, Vietnam on February 18, 2000. According to Dinh, he and Pham never divorced and he still considered himself married to her, even though she lives in Vietnam and Dinh lives in Houston. Dinh stated that he and Pham had a wedding ceremony in Vietnam, and not merely an engagement party, as Lan contended. On cross-examination, Dinh testified inconsistently regarding (1) whether he and Pham obtained a marriage license in Vietnam and (2) whether a marriage license was even necessary in Vietnam. Dinh first stated that he did not obtain a marriage license in Vietnam, but then he disagreed with Lan's counsel and twice stated that he and Pham had obtained a marriage license. Dinh then testified that it was not necessary to obtain a marriage license to be legally married in Vietnam. Dinh did not present to the trial court a marriage license, or the Vietnamese equivalent, demonstrating his marriage to Pham.

The trial court admitted into evidence an "Application for Certification," applied for by Pham on June 24, 2008, and certified by Luong Thi Dung, the "Chief of Town Section No. 3," which reflected that Pham's family performed a wedding ceremony between Dinh and Pham on February 18, 2000. In doing so, the trial court stated, "This is offered only as to the date of a marriage, not to prove the marriage. It does not prove the marriage. And I'm not admitting it to prove a marriage." The trial court also admitted an affidavit from Dung, stating that she made the certification to help Pham's older sister. Dung averred, "I trust in [Pham's] family and I made the certification according to the request of [Pham's sister] to help her. Actually, I did not know who was the groom in the wedding ceremony mentioned above."

Pham testified by deposition. She stated that she married Dinh on February 18, 2000, that she has "not yet" divorced him, and that she still considered him to be her husband. Lan presented further deposition testimony, during which Pham was evasive and refused to answer questions from Lan's counsel regarding her alleged 2002 marriage to an Australian man.

The trial court ruled that Lan and Dinh "were never married and thus, a marriage never existed between the two." Upon request by Lan, the trial court issued findings of fact and conclusions of law. The trial court issued the following findings:

(1) The court finds that [Lan] and [Dinh] were never formally married and thus, a marriage never existed between the two.

(2) The court further finds that [Lan] and [Dinh] were never informally married due to the impediment of [Dinh's] prior marriage and thus, a marriage never existed between the two.

The court concluded that "[a] marriage never existed, either formally or informally, between [Lan] and [Dinh]."

Lan moved for a new trial, contending that she had obtained "newly discovered evidence" that Dinh and Pham never married. Lan attached affidavits from attor-

neys familiar with Vietnamese marriage law and argued that common-law marriage does not exist in Vietnam and that Dinh and Pham did not follow the appropriate procedures for formally registering and recognizing their alleged marriage. Lan also presented evidence of a Vietnamese marriage certificate between Pham and Howard Wilde, an Australian, registered in Ho Chi Minh City on May 27, 2002. Lan further argued that the putative spouse doctrine applied and entitled her to a division of the assets obtained during her relationship with Dinh. Lan requested that the trial court rescind its final judgment and allow a trial on the putative spouse issue.

The trial court denied Lan's motion for new trial and this appeal followed.

## Appellate Jurisdiction

Although Dinh contends that we have jurisdiction over this appeal, he mentions that this may be "an unauthorized interlocutory appeal," because the trial court's judgment is entitled "Final Judgment" with the handwritten addendum "(AS TO MARRIAGE)" and it includes a sentence stating that "[t]he issue of the existence of a marriage was bifurcated and tried separate and apart from all other issues, by agreement of the parties." We briefly address this issue.

■ The general rule is that, absent mostly statutory exceptions, an appeal may only be taken from a final judgment. *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001). A judgment is final for the purposes of appeal if it "disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Id.* The language of an order or judgment can make it final if the language "expressly disposes of all claims and all parties." *Id.* at 200; *John v. Marshall Health Servs., Inc.,* 58 S.W.3d 738, 740

(Tex.2001) (per curiam) (applying presumption from *North East Independent School District v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966), that judgment rendered after conventional trial on merits and containing "Mother Hubbard" clause is final and appealable).

■ Here, both Lan and Dinh sued each other for divorce. By finding, after a trial, that there was no formal marriage between Lan and Dinh and that Dinh's prior marriage to Pham constituted an impediment to an informal marriage with Lan, and therefore Dinh and Lan never entered into a valid marriage, the trial court effectively disposed of the claims between Lan and Dinh. Furthermore, the judgment of the trial court expressly stated that "[a]ll relief not expressly granted herein is denied. This Judgment disposes of all parties and all claims in this cause of action and is therefore final." We conclude that the *Aldridge* presumption, that a judgment rendered after a conventional trial on the merits is final and appealable, applies in this case, and this is not an "unauthorized interlocutory appeal." We therefore hold that we have jurisdiction over this appeal.

## Sufficiency of Evidence

In two issues, Lan contends that the evidence is legally and factually insufficient to support the trial court's finding of fact that Lan and Dinh were never informally married due to the impediment of Dinh's prior marriage to Pham.

### A. Standard of Review

In a bench trial, the trial court's findings of fact have the same weight as a jury verdict, and we review the legal and factual sufficiency of the evidence to support the findings using the same sufficiency standards as when we review a jury's verdict. *Daniel v. Falcon Interest Realty Corp.,* 190 S.W.3d 177, 184 (Tex.App.-

Houston [1st Dist.] 2005, no pet.) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994)). When challenged, a trial court's findings of fact are not conclusive if, as here, there is a complete reporter's record on appeal. *Id.* (citing *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex.App.-Houston [1st Dist.] 2002, pet. denied)).

When conducting a legal sufficiency review, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005); *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex.App.-Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. We sustain a no-evidence contention only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

When conducting a factual sufficiency review of a finding on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the judgment only if the evidence supporting the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. *Figueroa v. Davis*, 318 S.W.3d 53, 59 (Tex.App.-Houston [1st Dist.] 2010, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986)). When determining the sufficiency of the evidence supporting a finding on which the appellant bears the burden of proof, we set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing *Cain*, 709 S.W.2d at 176). In a bench trial, the trial court acts as the fact-finder and is the sole judge of the credibility of witnesses. *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex.App.Houston [1st Dist.] 2005, no pet.); *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003) ("It is a familiar principle that in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the [fact-finder]."). The fact-finder may choose to believe one witness over another, and we "may not impose [our] own opinion to the contrary." *Figueroa*, 318 S.W.3d at 60.

### B. Validity of Dinh's Prior Marriage to Pham

A valid informal, or common-law, marriage consists of three elements: (1) agreement of the parties to be married; (2) after the agreement, their living together in Texas as husband and wife; and (3) their representing to others in Texas that they are married. TEX. FAM.CODE ANN. § 2.401(a)(2) (Vernon 2006); *Eris v. Phares*, 39 S.W.3d 708, 713 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (citing *In re Estate of Giessel*, 734 S.W.2d 27, 30 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.)). The existence of an informal marriage is a fact question, and the party seeking to establish existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence. *Weaver v. State*, 855 S.W.2d 116, 120 (Tex.App.-Houston [14th Dist.] 1993, no pet.). An informal marriage does not exist "until the concurrence of all three elements." *Eris*, 39 S.W.3d at 713 (citing *Winfield v. Renfro*, 821 S.W.2d 640, 645

(Tex.App.-Houston [1st Dist.] 1991, writ denied)).

A person may not be a party to an informal marriage if the person is "presently married to a person who is not the other party to the informal marriage." TEX. FAM.CODE ANN. § 2.401(d); *see also Howard v. Howard*, 459 S.W.2d 901, 904 (Tex.Civ.App.-Houston [1st Dist.] 1970, no writ) ("If an impediment to the creation of a lawful marriage between the parties exists, as when one is married to another ... there can be no common law marriage even if all the three elements are proved."). A marriage is void if it is entered into when either party to the marriage has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse. TEX. FAM.CODE ANN. § 6.202(a) (Vernon 2006). When two or more marriages of a person to different spouses are alleged, we presume that the most recent marriage is valid against each marriage that precedes it, until one who asserts the validity of a previous marriage proves its validity. *Id.* § 1.102 (Vernon 2006); *In re Estate of Loveless*, 64 S.W.3d 564, 573–74 (Tex.App.-Texarkana 2001, no pet.). This presumption is one of the strongest known to law; it is, in itself, evidence; and it "may even outweigh positive evidence to the contrary." *Loveless*, 64 S.W.3d at 574 (citing *Tex. Emp'rs Ins. Ass'n v. Elder*, 155 Tex. 27, 282 S.W.2d 371, 373 (1955)). The presumption's strength increases with the lapse of time, acknowledgments by the parties to the marriage, and the birth of children. *Id.*

This presumption that the most recent marriage is valid continues "until a party proves the impediment of a previous marriage and its continuing validity." *Id.* (citing *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 165 (Tex.1981)). The burden of proof is, therefore, on the party challenging the most recent marriage on the basis of a prior marriage to prove (1) the validity of the prior marriage and (2) its continuing validity. *Id.; see also Claveria*, 615 S.W.2d at 165.

Traditionally, courts have used the law of the place a marriage purportedly occurred to determine the validity of the ceremony. *Loveless*, 64 S.W.3d at 575 (citing *Braddock v. Taylor*, 592 S.W.2d 40, 42 (Tex.Civ.App.-Beaumont 1979, writ ref'd n.r.e.)). Foreign law "is regarded as a fact issue in the State of Texas." *Franklin v. Smalldridge*, 616 S.W.2d 655, 657 (Tex.Civ.App.-Corpus Christi 1981, no writ). The party relying on such foreign law must therefore strictly plead and prove the law. *Id.; see also* TEX.R. EVID. 203 ("A party who intends to raise an issue concerning the law of a foreign country shall give notice in the pleadings or other reasonable written notice, and at least 30 days prior to the date of trial such party shall furnish all parties copies of any written materials or sources that the party intends to use as proof of the foreign law."); *see also Loveless*, 64 S.W.3d at 575 (recognizing trial court's right to take judicial notice of law of Honduras as evidence regarding validity of prior marriage, based on portions of Honduran Family Code attached to purported wife's motion for summary judgment, as requested by purported wife).

The party attacking the validity of the subsequent marriage must also introduce sufficient evidence, standing alone, to negate the dissolution of the previous marriage. *Loveless*, 64 S.W.3d at 574 (citing *Wood v. Paulus*, 524 S.W.2d 749, 758 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.)). To rebut the presumption, the proponent of the earlier marriage must prove that (1) the first spouse was alive at the time the husband married the second wife; (2) the husband

never secured a divorce or annulment from the first wife; and (3) the first wife never secured a divorce or annulment from the husband. *Medrano v. State,* 701 S.W.2d 337, 341 (Tex.App.-El Paso 1985, pet. ref'd). After the party introduces some evidence of a previous and continuing marriage, the fact-finder determines the weight of such evidence. *Loveless,* 64 S.W.3d at 574 (citing *Claveria,* 615 S.W.2d at 166 and *Wood,* 524 S.W.2d at 758). We must therefore determine (1) whether Dinh proved that his purported marriage to Pham was valid under the law of Vietnam and, if so, (2) whether Dinh proved that he and Pham had not secured a divorce or annulment at the time he purportedly married Lan.

Dinh contends that he presented sufficient evidence to prove the existence of his prior marriage to Pham and its continuance because both he and Pham testified that they married each other in a ceremony in Vietnam on February 18, 2000, that they had not divorced, and that they still considered themselves to be husband and wife.

■■■ Although Dinh, as the party challenging the validity of the marriage to Lan by asserting the continuing validity of a prior marriage to Pham, bore the burden of establishing the validity of the alleged marriage to Pham, he made no effort to plead and prove the law of Vietnam concerning the requirements for a valid marriage. Dinh and Pham, testifying by deposition, stated only that they had a "formal wedding ceremony" in Saigon, Vietnam on February 18, 2000. Neither party testified regarding the details of the ceremony, nor did Dinh present evidence that the alleged wedding ceremony was performed by one authorized under Vietnamese or Texas law to perform weddings, such as a religious official or a judge. Dinh presented no evidence that either Vietnamese or Texas law would recognize his and Pham's actions as constituting a valid ceremonial marriage.

Furthermore, Dinh testified inconsistently at trial regarding whether he and Pham obtained a marriage license and regarding whether such a license was even required under Vietnamese law. After Dinh testified that he obtained a marriage license, having previously testified that he did not obtain a license, Lan's counsel impeached his testimony by presenting excerpts from his earlier deposition, in which he stated that he did not obtain a license. *See* Tex.R. Evid. 613(a) (allowing impeachment by prior inconsistent statement). Lan's counsel asked Dinh, "You understand that in Vietnam when people are married, there is going to be a marriage license, right?" Dinh replied, "Not necessarily." Lan's counsel then impeached Dinh by reading an excerpt from his deposition in which counsel asked Dinh the exact same question and he responded in the affirmative. Dinh did not offer, and the trial court did not admit, a marriage license demonstrating a valid marriage between Pham and himself.

The only official documentation of his purported marriage to Pham that Dinh presented was an "Application for Certification" of the wedding ceremony, applied for by Pham, and the accompanying certification by Luong Thi Dung, Chief of Town Section Number 3. The certification stated that on February 18, 2000, Pham's family performed a wedding ceremony for Pham and Dinh. The trial court admitted this document only to prove the date of the alleged marriage and not as proof of the marriage. Therefore, it does not constitute evidence of the alleged prior marriage. The document reflects that Pham applied for the certification on June 24, 2008, more than eight years after the alleged ceremony and nearly four months

after Dinh amended his answer and counter-petition and moved for declaratory judgment, asserting no marriage to Lan.[3]

Moreover, the validity of this document is affirmatively negated by the affidavit offered by Lan to disprove the document's validity. The trial court admitted an affidavit by Dung, the woman who certified that Pham's family performed a wedding ceremony, in which she stated that she made the certification at the request of Pham's elder sister and that she did not know who the groom was at the ceremony. This affidavit constitutes an admission by the affiant that she did not make the certification based on her personal knowledge. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex.2008) (per curiam) (holding, in summary judgment context, that "affidavit showing no basis for personal knowledge is legally insufficient"); *Leavings v. Mills*, 175 S.W.3d 301, 312 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding that affidavit, which did not include basis for affiant's knowledge, was incompetent to prove facts in affidavit); *see also* Tex.R. Evid. 602 (stating that witness may not testify to matter unless party introduces sufficient evidence to demonstrate that witness has personal knowledge of matter). We conclude, therefore, that the "certificate" of the marriage of Pham and Dinh is no evidence that Dinh and Pham entered into a valid marriage on February 18, 2000.

Additional evidence introduced at trial supports the conclusion that Dinh and Pham were not validly married at the time of the October 7, 2000 ceremony between Lan and Dinh. Dinh testified that, although he had previously corresponded with Pham via e-mail, he first met her face-to-face when he traveled to Vietnam in February 2000. The trial court admitted pictures of Dinh and Pham at their alleged ceremony, standing under a banner reading "Dinh Hom." Both Lan and Dinh testified that, in Vietnamese, "dinh hom" means "engagement."[4] Lan testified that, after Dinh returned from Vietnam, he told her that he became engaged to Pham while he was in Vietnam, but he called off the wedding to Pham because he wanted to marry Lan, and they became engaged shortly thereafter. When asked at trial if he knew of Pham's alleged subsequent marriage, Dinh replied that he "[didn't] know" about any other marriages and that "that's [Pham's] life." Pham, in her deposition testimony, was evasive and hostile and refused to answer any questions about her alleged 2002 marriage to an Australian man. Lan attached to her motion for new trial a certification of marriage between Pham and Howard Wilde, an Australian, dated May 12, 2002. Dinh introduced no evidence that, even if he was validly married to Pham on February 2000 (as to which no competent evidence was admitted), he was still validly married to her at the time of his traditional Vietnamese wedding ceremony to Lan on October 7, 2000, other than his own testimony that he and Pham never divorced. *See Loveless*, 64 S.W.3d at 576 ("[W]hile Rosa did not have to present evidence showing the nonexistence of a divorce or annulment in every jurisdiction where such proceedings could have been possible, she did have to show the nonexistence of a divorce or annulment in jurisdictions where she or James might reasonably have been expected to pursue them.").

Lan also introduced an application for a marriage license in Harris County, signed

---

3. In neither of these documents did Dinh assert that he could not have validly married Lan because he was already validly married to Pham.

4. Dinh attempted to explain the photograph by stating that he and Pham first had an engagement party and then they had a wedding ceremony.

by both Dinh and her, in which he stated that was not presently married. Furthermore, in his original answer and counter-petition for divorce, Dinh admitted that he and Lan were married, although he asserted that they married on November 1, 2005, whereas Lan claimed October 7, 2000, as their marriage date. *See Bay Area Healthcare Grp., Ltd. v. McShane,* 239 S.W.3d 231, 235 (Tex.2007) (per curiam) (holding that superseded pleadings are admissible in evidence as admission of party opponent); *see also Sosa v. Cent. Power & Light,* 909 S.W.2d 893, 895 (Tex.1995) (per curiam) (noting that "[c]ontrary to statements in live pleadings, [statements] contained in superseded pleadings are not conclusive and indisputable judicial admissions").

Dinh and Pham's testimony that they had a formal wedding ceremony in Vietnam on February 18, 2000 and that they still considered themselves to be husband and wife is some evidence of a valid and continuing prior marriage. When we view all of the evidence in a neutral light, however, we conclude that Dinh failed to carry his burden of proving either (1) his valid prior marriage to Pham under Vietnamese law or (2) the continuing validity of such a prior valid marriage, as required to overcome the strong presumption that his marriage to Lan was valid. *See Loveless,* 64 S.W.3d at 573–74; *Claveria,* 615 S.W.2d at 165. Rather, the evidence supporting the trial court's finding of the impediment of a prior marriage is so weak that the judgment is clearly wrong and manifestly unjust. We hold that the trial court's finding that no informal marriage existed between Dinh and Lan due to the impediment of Dinh's prior marriage to Pham is not supported by factually sufficient evidence.

We sustain Lan's second issue.

### C.   *Evidence Supporting Trial Court's Determination of No Marriage*

Dinh contends that the evidence presented at trial supports the trial court's ultimate conclusion in its final judgment that Lan and Dinh "were never married and thus, a marriage never existed between the two," and thus the trial court's judgment should be affirmed, regardless of whether sufficient evidence supports the trial court's finding of an impediment to the informal marriage.

An erroneous finding of fact or conclusion of law does not require a judgment to be reversed if the judgment is otherwise correct on the merits. *Lee v. Lee,* 981 S.W.2d 903, 906 (Tex.App.-Houston [1st Dist.] 1998, no pet.). However, when findings of fact are filed by the trial court, these findings "shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein." Tex.R. Civ. P. 299. "The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact...." Tex.R. Civ. P. 299; *Levine v. Maverick Cnty. Water Control & Improvement Dist. No. 1,* 884 S.W.2d 790, 796 (Tex.App.-San Antonio 1994, writ denied) (stating that if trial court's findings do not include findings on ground of recovery or defense, party relying upon that ground on appeal must request additional findings or waive ground of recovery or defense). Express findings made by the trial court "cannot be extended by implication to cover further independent issuable facts." *Jones v. Smith,* 291 S.W.3d 549, 554 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *Intec Sys., Inc. v. Lowrey,* 230 S.W.3d 913, 919 (Tex.App.-Dallas 2007, no pet.) ("[A]n express finding of fact cannot extend by implication to cover independent grounds of defense ...."") (quoting *F.R. Hernandez Constr. & Supply Co. v. Nat'l Bank of*

*Commerce,* 578 S.W.2d 675, 679 (Tex. 1979)).

Here, the trial court stated in its final judgment that Land and Dinh "were never married and thus, a marriage never existed between the two."[5] In its findings of fact and conclusions of law, the trial court specified that it found (1) that Lan and Dinh never formally married, and (2) that Lan and Dinh never informally married "due to the impediment of [Dinh's] prior marriage [to Pham] and thus, a marriage never existed between the two." Under Rule 299, these findings form the basis of the trial court's judgment "upon all grounds of recovery and of defense embraced therein." TEX.R. CIV. P. 299. The trial court did not issue findings on the specific statutory elements of an informal marriage. *See* TEX. FAM.CODE ANN. § 2.401(a)(2).

 Whether an informal marriage is void due to the impediment of a prior marriage and whether a party failed to establish the necessary statutory elements for an informal marriage are two separate and independent bases for finding "no informal marriage." *See id.* § 2.401(d) (stating that person cannot be party to informal marriage if presently married to another); *Howard,* 459 S.W.2d at 904 (holding informal marriage cannot exist if one party is married to another person, even if statutory elements otherwise established). Because the trial court's express findings state only that Lan and Dinh never informally married because of the impediment, and do not state that Lan failed to establish any of the statutory elements of an informal marriage, the trial

court's express findings regarding the impediment cannot be extended by implication to cover these independent issuable facts. *See Jones,* 291 S.W.3d at 554; *see also* TEX.R. CIV. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact. . . ."); *Leonard v. Eskew,* 731 S.W.2d 124, 132 (Tex.App.-Austin 1987, writ ref'd n.r.e.) ("[B]ecause the trial court judgment rests upon the *specific* grounds set out in the findings of fact and conclusions of law that accompany the judgment, we are not permitted to assume omitted findings or conclusions necessary to any *other* grounds for the judgment, even though such other grounds be pleaded in the case.") (emphasis in original).

We therefore decline to follow Dinh's suggestion that we affirm the trial court's judgment on the basis that Dinh presented sufficient evidence contradicting the existence of the statutory elements of an informal marriage, and that, therefore, the trial court's ultimate determination of no marriage is not against the great weight and preponderance of the evidence.

### Conclusion

We reverse and remand the case for determination of whether Lan can establish the statutory elements of a valid informal marriage.

---

5. The trial court's final judgment originally included two separate rulings stating that the parties were neither formally nor informally married. The trial court scratched out the entire second sentence, relating to informal marriage, as well as the "formally" from the first sentence, leaving the following ruling: LAN NGOC NGUYEN, Petitioner, and DINH DUC NGUYEN, Respondent, were never married and thus, a marriage never existed between the two.