

# IN THE
# TENTH COURT OF APPEALS

No. 10-19-00015-CV

## IN THE MATTER OF THE MARRIAGE OF
## KAREN LANGSTON AND STEPHEN STRUVE

From the 85th District Court
Brazos County, Texas
Trial Court No. 16-001494-CVD-85

## MEMORANDUM OPINION

Stephen Struve (Stephen) appeals the trial court's decree granting a divorce from an alleged informal marriage between Stephen and Karen Langston (Karen). We will affirm.

Stephen and Karen met and began a relationship while they were both living in Colorado in the early 1980s. In 1985 they moved to Texas, bringing with them Karen's two children. They eventually settled in Brazos County on a 755-acre tract of land.

In January 2012, Stephen and Karen separated. In September 2015, Karen filed a trespass to try title suit alleging joint ownership of the 755-acre tract of land because of an informal marriage, and in June of 2016 Karen filed a petition for divorce. The two

lawsuits were consolidated in July 2016. After a bench trial, the trial court found that Stephen and Karen had entered into an informal marriage, granted a divorce, and divided the marital property.

In two issues, Stephen complains that the evidence is legally and factually insufficient to support the trial court's finding that an informal marriage existed.

". . . Appellate courts must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.

*Wilson*, 168 S.W.3d at 827.

In reviewing a record for factual sufficiency, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Farrell v. Farrell*, 459 S.W.3d 114, 118 (Tex. App.—El Paso, no pet.). If the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the factual sufficiency issue should be sustained. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). When the complaining party challenges the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court must sustain

the finding unless all the evidence, both for and against the finding, is so weak or insufficient that the finding is manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed for legal and factual sufficiency of the evidence by the same standards. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Wells Fargo Bank, N.A. v. Citizens Bank of Texas, N.A.*, 181 S.W.3d 790, 796 (Tex. App.–Waco 2005, pet, denied).

Marriage, whether ceremonial or informal, is proved as any other fact might be proved, although the character of the evidence might be different. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Proof of an informal marriage may be shown by the conduct of the parties, or by such circumstances as their addressing each other as husband and wife, acknowledging their children as legitimate, joining in conveyances as spouses, and occupying the same dwelling place. *Claveria*, 615 S.W.2d at 166.

The elements of an informal marriage are (1) an agreement to be married, (2) after the agreement, the couple lived together in this state as husband and wife, and (3) the couple represented to others that they were married. *See* TEX. FAM. CODE ANN. § 2.401(a)(2); *Russell*, 865 S.W.2d at 932. Whether an informal marriage existed is a fact question, and the party seeking to establish an informal marriage bears the burden of proving all three elements by a preponderance of the evidence. *Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Weaver v. State*, 855 S.W.2d 116, 120 (Tex. App.—Houston [14th Dist.] 1993, no pet.)). An informal marriage cannot exist until all three elements occur concurrently. *See Nguyen*, 355 S.W.3d

at 88–89.  To establish that the parties agreed to be husband and wife, it must be shown that they intended to create an immediate and permanent marriage relationship, not merely a temporary cohabitation that may be ended by either party.  *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App.—Texarkana 2013, no pet.) (citing *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

An agreement to be married cannot be inferred from the mere evidence of cohabitation and representations of marriage to others, but such evidence may be circumstantial evidence of an agreement to be married.  *Russell*, 865 S.W.2d at 933.  The circumstances of each case must be determined from the facts of that case.  *Id.*

During the trial before the district court Karen testified to the following:  She and Stephen had an agreement that they were a married couple.  She said that the agreement to be a married couple was entered into while they were residing in Colorado before moving to Texas.  During their time in Colorado, they both introduced themselves to others as husband and wife.  In 1985 Stephen, Karen, and Karen's two daughters moved to Texas in order to help care for Stephen's grandfather.  Karen and Stephen had commitments to each other that they were a married couple before moving to Texas, and Karen would not have moved to Texas with Stephen if they had not been married.  Stephen and Karen continued their agreement that they were a married couple upon moving to Texas and while living in Texas.  Karen and Stephen initially moved to Three Rivers, Texas, and resided in a mobile home together as a family with Karen's two daughters.  Karen and Stephen purchased their second home together in 1989 and lived together in that home until 2004 or 2005.  While living in the Three Rivers area, Karen

was referred to as Karen Struve, and Stephen never objected or told others that Karen was not his wife. Over the years they both referred to each other as husband and wife. They vacationed and took trips together, some for pleasure and some for business. Stephen never listed Karen as a co-owner on business documents because Stephen said it protected Karen in case of a lawsuit. Karen accepted that she was not named as an owner and trusted Stephen in that regard.

Karen also testified, they started businesses and made business decisions as husband and wife. The couple moved to Brazos County in 2003 to relocate a wine distribution business to a more central location. On business trips Karen was referred to as Stephen's wife and went by Karen Struve. Karen recalled one specific occasion while at dinner with fourteen other people when she said, "Steve is my husband and I am his wife. Don't you agree, Steve?" To which Stephen replied, "Yes." On another occasion, Stephen presented Karen with a draft of his proposed last will and testament that had been prepared by Stephen's attorney, and it referred to Karen as his wife. Since making the agreement with Stephen to be a married couple over the thirty years of their relationship, Karen always thought of Stephen as her husband and of she as his wife. Ultimately, their relationship deteriorated with Karen moving out in 2012.

Three affidavits designating Karen's and Stephen's homestead and non-homestead from the years 1995, 1999 and 2006 were admitted into evidence and recited that the affiants were "Steve Struve and wife Karen Langston" or "Steve Struve and Karen L. Langston husband and wife." Three homestead affidavits were executed for purposes of obtaining loans, and it clearly appears Stephen and Karen held themselves

out to the notary and their banker as spouses. All three affidavits were filed as a public record with the Atascosa County Clerk.

Karen had the burden in the trial court to establish each element of a common law marriage by a preponderance of the evidence. Because Karen did not commence a proceeding to prove the marriage under section 2.401(a)(2) of the Family Code within two years of the date on which Karen and Stephen separated and ceased living together, then there is a rebuttable presumption Karen and Stephen did not enter into an agreement to be married. See TEX. FAM. CODE ANN. § 2.401(b); *Amaye v. Oravetz*, 57 S.W.3d 581, 584 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A presumption is a rule of law requiring the fact finder to reach a particular conclusion in the absence of evidence to the contrary. *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995); *Amaye*, 57 S.W.3d at 584. The effect of a presumption is to force the party against whom it operates to produce evidence to negate the presumption. *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993); *Amaye*, 57 S.W.3d at 584.

After a review of all the evidence before the trial court, under the applicable standards of review, we conclude that there is legally and factually sufficient evidence to establish that (1) Karen and Stephen had an agreement that they were a married couple, (2) after the agreement, Karen and Stephen lived together in Texas as husband and wife, and (3) Karen and Stephen represented to others that they were married. We conclude that there is legally and factually sufficient evidence to support the trial court's finding that an informal marriage existed between Karen and Stephen. Furthermore, we conclude that there is sufficient evidence to rebut the presumption imposed by section

2.401(b) of the Family Code.  We overrule Stephen's issues and affirm the trial court's judgment.


MATT JOHNSON
Justice


Before Chief Justice Gray,
     Justice Neill, and
     Justice Johnson
Affirmed
Opinion delivered and filed May 28, 2021
[CV06]

