HULYA GARRETT
v.
CHARLES W. BURRIS

No. COA12-451

Filed 4 December 2012

**Marriage—common law marriage—under Texas law—no agreement between the parties**

The trial court did not err by concluding that there was no common law marriage between plaintiff and defendant under Texas law and denying plaintiff's claim for absolute divorce. Plaintiff failed to prove beyond a preponderance of the evidence that there was an agreement between the parties to enter into an informal marriage.

Judge BEASLEY dissenting.

Appeal by Plaintiff from order entered 6 May 2009 by Judge Edward L. Hedrick, IV, in Iredell County District Court. Heard in the Court of Appeals 25 September 2012.

*Hunt Law, PLLC, by Gregory Hunt, for plaintiff.*

*M. Clark Parker, P.A., by M. Clark Parker, for defendant.*

THIGPEN, Judge.

Hulya Garrett ("Plaintiff") appeals from the trial court's order denying her claim for absolute divorce from Charles W. Burris ("Defendant"). After careful review, we affirm.

GARRETT v. BURRIS

[224 N.C. App. 32 (2012)]

## I. Factual & Procedural Background

In 1990, (then) thirty-year-old Plaintiff emigrated from Turkey to the United States, where she settled in Texas and eventually married Brett Garrett. Plaintiff divorced Mr. Garrett in August 2000 and began living with Defendant in September or October 2000. Plaintiff was initially apprehensive about living with Defendant as an unmarried couple, but she relented when Defendant informed her that common law marriage in Texas was equivalent to being married. Although Plaintiff and Defendant never had a formal wedding ceremony, they often introduced themselves socially as "husband and wife" and even bought rings to memorialize their "marriage." The parties moved to North Carolina in 2003 and continued to refer to one another in public as husband and wife.

On 6 May 2008, Plaintiff filed a complaint in Iredell County District Court alleging that "Plaintiff and Defendant became common law husband and wife in Texas in September 2000 and separated on August 15, 2007" and asserting claims for post-separation support, alimony, an equitable distribution of marital property, and absolute divorce. Defendant filed an answer and counterclaim on 29 May 2008 asserting, *inter alia*, that Plaintiff's complaint be dismissed for failure to state a claim "as the parties . . . are not now, nor have they ever been married in any state, be it common law or otherwise." The parties waived their right to a jury trial, and the matter came on to be heard in Iredell County District Court on 23 April 2009. By order entered 6 May 2009, the trial court denied Plaintiff's claim for absolute divorce, concluding that Plaintiff had failed to meet her burden in proving that the parties had entered into a common law marriage while living in Texas. Plaintiff's initial appeal from that order was dismissed by this Court as interlocutory in light of Defendant's counterclaims, which remained pending before the trial court. *See Garrett v. Burris*, No. COA09-1662 (N.C. App. Nov. 2, 2010). The record reveals that those counterclaims have since been resolved and that Plaintiff's appeal from the trial court's order denying her claim for absolute divorce is now properly before us. We accordingly exercise jurisdiction over this matter pursuant to N.C. Gen. Stat. § 7A-27(c) (2011) (providing for an appeal as a matter of right from any final judgment of the district court), and we proceed to address the merits of Plaintiff's appeal.

## II. Analysis

Plaintiff contends the trial court erred in concluding that there was no common law marriage between Plaintiff and Defendant under

Texas law. Our standard of review where, as here, the trial court sits without a jury is well established:

> In a bench trial in which the [trial] court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial . . . are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Hinnant v. Philips*, 184 N.C. App. 241, 245, 645 S.E.2d 867, 870 (2007) (citations and quotation marks omitted) (second alteration in original).

Plaintiff does not challenge any of the trial court's findings of fact as unsupported by the evidence. These findings, therefore, are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Plaintiff contends only that the trial court erred as a matter of law in concluding that no common law marriage existed between Plaintiff and Defendant. Specifically, Plaintiff insists that this conclusion is not supported by the findings of fact and that there was "overwhelming un-rebutted evidence supporting the finding of a valid common-law marriage."

At the outset, we note that common law marriages cannot be created in North Carolina. *State v. Wilson*, 121 N.C. 650, 28 S.E. 416 (1897); *State v. Samuel*, 19 N.C. 177 (1836). North Carolina courts, "however, will recognize as valid a common law marriage 'if the acts alleged to have created it took place in a state in which such a marriage is valid.' " *State v. Alford*, 298 N.C. 465, 473, 259 S.E.2d 242, 247 (1979) (citation omitted). Texas recognizes common law marriages. *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993).[1] Under Texas law, "[a] valid informal, or common-law, marriage consists of three elements: (1) agreement of the parties to be married; (2) after the agreement, their living together in Texas as husband and wife; and (3) their representing to others in Texas that they are married." *Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App. 2011) (citing Tex. Fam. Code. Ann. § 2.401(a)(2) (2006)). All three elements must exist concurrently

---

1. We take judicial notice of and apply the substantive law of Texas in reviewing the issue of Plaintiff and Defendant's alleged common law marriage. N.C. Gen. Stat. § 8-4 (2011); *Thames v. Nello L. Teer Co.*, 267 N.C. 565, 148 S.E.2d 527 (1966). North Carolina law applies with respect to procedural matters. *Young v. Railroad*, 266 N.C. 458, 146 S.E.2d 441 (1966).

for an informal marriage to exist. *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App. 1987). "The existence of an informal marriage is a fact question, and the party seeking to establish existence of the marriage bears the burden of proving the three elements by a preponderance of the evidence." *Nguyen*, 355 S.W.3d at 88.

The trial court determined that Plaintiff failed to carry her burden in establishing the existence of a common law marriage between the parties under Texas law. Specifically, the court cited Plaintiff's failure to establish the first element of her claim, concluding that "Plaintiff ha[d] failed to prove by the preponderance of the evidence that while in the State of Texas, both parties had a present agreement to be Husband and Wife." The court entered the following, pertinent, findings of fact in reaching this conclusion:

> 11. Plaintiff and Defendant began dating in approximately October of 1999, and Defendant moved into plaintiff's home in September or October of 2000, after Plaintiff's divorce from Brett Garrett.
>
> 12. Plaintiff told Defendant it would not be honorable to live together unless married. Defendant told Plaintiff that a common law marriage in Texas was the same as marriage so that it would be appropriate to live together. Each bought a ring to show that they were married. The parties lived together in Texas in the home of the plaintiff until they moved to North Carolina in 2003.
>
> 13. In Texas, the parties introduced themselves socially as Husband and Wife and referred to each other in public as Husband and Wife. The parties continued this behavior in North Carolina. The defendant's testimony otherwise is not credible. However, even according to the plaintiff, when "legal" documents were being generated, the parties would tell the preparers that the parties were unmarried.
>
> 14. The relevance of the actions of the parties in North Carolina is limited to informing the court of the intent of the parties while in Texas.
>
> 15. The remaining element of an informal marriage under the laws of Texas concerns whether the actions of the parties outlined above were pursuant to a mutual agreement between the parties presently to be husband

and wife at the time of the agreement. In addition to the actions of the parties outlined above, the court finds [the] following facts which are conflicting with respect to this issue:

a. The parties never had a formal or informal ceremony. The parties never exchanged vows. They did not have joint bank accounts or joint checking accounts.

b. Plaintiff never officially assumed the surname of the Defendant, although she used his surname in public and on unofficial documents.

c. On May 2, 2003 a Release of Lien was executed with respect to a note dated December 22, 2000. The maker of the note was Hulya Garrett, "an unmarried woman."

d. The parties filed a federal tax return due April 2002 as "married filing joint return."

e. In Texas, Plaintiff kept her real property in her sole name until she sold the property in 2003. With the proceeds, she purchased property in North Carolina in her sole name as reflected in a deed recorded 2/20/04 in Iredell County Book 1526 Page 1604 in which Plaintiff is listed as the Grantee: "Hulya Garrett, unmarried."

f. After moving to North Carolina, Plaintiff told Kay Webster, a friend of the Defendant, that Plaintiff and Defendant had no intention to marry because there were too many issues between them.

g. On 12 August 2005, Plaintiff conveyed to Defendant real estate in North Carolina. The deed which plaintiff signed lists Plaintiff as "unmarried." This deed was recorded in Book 1672 Page 407, Iredell County Registry.

h. On April 10 2007, Defendant signed an official wood-destroying insect information report in which the buyers were listed as Chuck and Hulya Burris.

i. On 27 April 2007, Plaintiff and Defendant caused to be recorded a deed in Book 22172 Page 709 Mecklenburg County Registry listing both parties as

GARRETT v. BURRIS

[224 N.C. App. 32 (2012)]

"unmarried" and acquiring the property as "tenants-in-common."

Plaintiff cites the trial court's finding of fact 15 and its subparts and takes issue with the trial court's statement that its findings on the issue of a present agreement between the parties are "conflicting." Plaintiff specifically challenges each "sub-finding" under finding of fact 15 as "inapposite," or, in fact, supportive of Plaintiff's claim. While it is true that some of the trial court's findings tend to support the existence of a present agreement between the parties, it is likewise true that others tend to undermine such an agreement. For instance, the parties filed a joint tax return in 2002 (finding of fact 15(d)), but Plaintiff executed other legal documents, including a promissory note dated 22 December 2000, as "unmarried" (findings of fact 11 and 15(c)); Plaintiff sometimes used Defendant's surname in public (finding of fact 15(b)), but Plaintiff did not assume Defendant's surname as her own legal name (finding of fact 15(b)); the parties lived together and referred to each other as husband and wife in public (findings of fact 12 and 13), but Plaintiff owned and maintained property in her own name and even acquired property with Defendant in 2007 as tenants-in-common (findings of fact 15(e) and 15(i)). Furthermore, while we agree with Plaintiff that participation in a wedding ceremony (formal or informal), assuming Defendant's surname as her legal surname, and sharing her real property with Defendant are not *requirements* for a valid common law marriage under Texas law, these facts are nonetheless *probative* in discerning the parties' intent to form an agreement. The trial court's findings, indeed, are in conflict on the issue of the parties' intent to enter an informal agreement to marry, and we accordingly turn to the relevant Texas law in resolving this issue.

In examining whether a common law marriage exists, the Texas Court of Appeals has previously stated that where the evidence is conflicting as to the "agreement" element,

> the effect of all the testimony is left to the sound discretion of the trial court which encounters the parties and the witnesses, observes their demeanor and personalities, judges the credibility of the witnesses, interprets the truth and reality, and finally draws upon its storehouse of human living and experience before endeavoring to judicially decree its judgment.

*Rosales v. Rosales*, 377 S.W.2d 661, 664 (Tex. App. 1964). The *Rosales* court further stated that "[i]f there is any evidence from which the judgment can be upheld it is our duty to do so and every issue raised by the testimony will be resolved in favor of the judgment. *Id.*

We also find instructive the Texas Court of Appeals' decision in *In re Estate of Giessel*, 734 S.W.2d 27 (Tex. App. 1987). There, the appellants, who were cousins of the decedent, attempted to disprove the validity of a common law marriage between the decedent and the appellee by showing that the appellee, who stood to recover as the sole heir of the decedent's estate, had represented that she was not married on legal documents such as tax returns, social security, her driver's license, and bank records. *Id.* at 31. The court rejected the appellants' contention and held that the appellee's statements on her tax returns and other legal documents "go to the *weight* of the evidence[,]" a question for the jury, and because "[t]here was substantial evidence before the jury to support either an affirmative or negative answer to the sole special issue[,]" the court would "not substitute [its] judgment for the jury's." *Id.* at 31-32 (emphasis added).

More recently, the Texas Court of Appeals addressed the issue of common law marriage in *Romano v. Newell Recycling of San Antonio, LP*, No. 04-07-00084-CV (Tex. App. 2008). There, the parties offered conflicting evidence as to the "agreement" element: testimony was introduced indicating that the parties had "both agreed . . . to live like husband and wife" . . . [and] be a married couple[;]" however, there was also evidence introduced that the alleged wife had executed documents indicating that the parties were unmarried. *Id.* at 4 (quotation marks omitted) (ellipses in original). Citing *Giessel, supra*, the court stated that the representations in the legal documents "go to the weight to be afforded the evidence[,]" and, further, that "[a]s the trier of fact, it was the trial court's province to weigh the evidence and resolve any conflicts, and we must assume it resolved all evidentiary conflicts in accordance with its decision if a reasonable human being could have done so." *Id.*

Analogous to *Rosales, Giessel*, and *Romano*, the parties in the instant case introduced conflicting evidence on the "agreement" element, as recited and discussed above. The trial court performed its duty of weighing and resolving the conflicts in the evidence and determined that Plaintiff had not proven beyond a preponderance of the evidence that there was an agreement between the parties to enter into an informal marriage. It is not the function of this Court to reweigh the evidence on appeal. The trial court's findings were suffi-

GARRETT v. BURRIS

[224 N.C. App. 32 (2012)]

cient to support its conclusion that Plaintiff failed to meet her burden in proving an element of her claim, and, in turn, that no common law marriage existed between the parties.

III. Conclusion

For the foregoing reasons, the trial court's order denying Plaintiff's claim for absolute divorce is hereby

AFFIRMED.

Judge McGEE concurs. Judge BEASLEY dissents by separate opinion.

BEASLEY, Judge dissenting.

Because I believe that the trial court's own findings establish that a marriage occurred under Texas law, I would find its conclusion is unsupported and therefore respectfully dissent.

As the majority opinion correctly states above, the findings of the trial court are binding on this Court due to the Appellant's failure to challenge them. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Both the trial court and the majority of this Court rely on several findings of fact regarding events that occurred after the parties moved in together. However, this reliance ignores that the findings of fact regarding events prior to the parties moving in together satisfy **all** of the requirements for common law marriage under Texas law. Consequently, these later findings of fact have no bearing on the issue before us.

The majority opinion correctly lays out the law affecting the outcome of this case. The trial court found that the parties lived together and held themselves out to others as married, thereby satisfying two of the three requirements of common law marriage under Texas law. *See Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App. 2011)(citing Tex. Fam. Code Ann. § 2.401(a)(2)(2006)). The court only took issue with the element of agreement to be married. *See id.* As both the trial court and the majority opinion observe, Texas case law has found that these three elements must occur concurrently for a marriage to exist. *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App. 1987). In addition, and not in contrast, the Texas Code states that the agreement should precede the cohabitation and representations of marriage. Tex. Fam. Code Ann. § 2.401 (West 2011)("[T]he man and woman agreed to be married

and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.").

In Finding of Fact Number 12, the trial court found

> Plaintiff told Defendant it would not be honorable to live together unless married. Defendant told Plaintiff that a common law marriage in Texas was the same as marriage so that it would be appropriate to live together. Each bought a ring to show that they were married. The parties lived together in Texas in the home of the plaintiff until they moved to North Carolina in 2003.

These findings demonstrate that the parties intended to be married. The trial court explicitly found that the parties conditioned their living together on obtaining the status of "married" when it found Plaintiff refused to live with Defendant without being married and Defendant assured her that common law marriage was the same as "getting married." This is an express agreement and the trial court explicitly found that the parties, after this conversation, took all of the steps necessary to satisfy common law marriage requirements when they moved in together and bought the rings. *See Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App. 2001)(finding direct legal evidence of an agreement where one party stated it was not necessary "to be married to be married" and factual sufficiency where this statement led to "cohabitation and representations [of marriage,]" thereby creating an inferred agreement to be married). It is inapposite to conclude that the parties did not agree to be married by common law in light of Finding of Fact Number 12.

Both the majority opinion and the trial court draw their conclusion in reliance on acts and omissions that occurred **after** the events in Finding of Fact Number 12. The majority opinion stresses the importance of these later findings as *"probative* in discerning the parties' intent to form an agreement" and cites Texas law to show that where there is any evidence supporting the lower court's decision, it must be upheld. While I agree that Texas law places great deference with the trial courts in the event of conflicting evidence, *see Rosales v. Rosales*, 377 S.W.2d 661, 664 (Tex. App. 1964), I see no conflicting evidence in this case.

In Texas, the instant that all three requirements of common law marriage are satisfied and concurrent, a marriage forms. *See Bolash*, 733 S.W.2d at 699 (requiring concurrence). Once a common law marriage forms under the laws of Texas, it is treated in the same regard

IN RE S.K.N.

[224 N.C. App. 41 (2012)]

as any formal marriage and may only be dissolved by an act of the court or death. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 167 (Tex. 1981). "Once the marriage exists, the spouses' subsequent denials of the marriage, if disbelieved, do not undo the marriage." *Id.* (citing *De Beque v. Ligon*, 292 S.W. 157 (Tex. Comm'n App. 1927).

The later findings relied on by the trial court and the majority opinion does not conflict with this finding. They instead point to changes in behavior or intent, but are necessarily irrelevant because the marriage was already formed based on the express finding by the trial court. *See, e.g., Reilly v. Jacobs*, 536 S.W.2d 406, 408 (Tex. Civ. App. 1976)(finding evidence that husband opened bank accounts in his sole name, thus not shared, and that wife did not change her name did not nullify the existence of a common law marriage). Any act or behavior that followed the events recounted in Finding of Fact Number 12 is irrelevant to the issue before us because the marriage could not be terminated by a mere change of heart or regret. Because the events as found in Finding of Fact Number 12 occurred in Texas and satisfy the requirements of common law marriage under Texas law, this Court is bound to recognize the existence of the marriage. *State v. Alford*, 298 N.C. 465, 473, 259 S.E.2d 242, 247 (1979).