IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-840

Filed 05 July 2023

Forsyth County, No. 21CVS2973

KIENUS PEREZ BOULWARE, Petitioner,

v.

THE UNIVERSITY OF NORTH CAROLINA BOARD OF GOVERNORS, ex rel. WINSTON-SALEM STATE UNIVERSITY BOARD OF TRUSTEES, Respondent.

Appeal by defendant from judgment entered 31 January 2022 by Judge Eric C. Morgan in Forsyth County Superior Court. Heard in the Court of Appeals 7 June 2023.

> *Freedman Thompson Witt Ceberio & Byrd PLLC, by Christopher M. Watford, for the petitioner-appellant.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Kari R. Johnson, for the respondent-appellee.*

TYSON, Judge.

Kienus Perez Boulware ("Boulware") appeals from orders entered on 31 January 2022, which denied his request for relief and affirmed the decision of the Winston-Salem State University ("WSSU") Board of Trustees. We affirm.

## I.    Background

Boulware began his employment with WSSU on 4 January 2010. He was employed as head coach for five years and agreed to a fixed-term contract for 48

months set to terminate on 31 December 2020.

Boulware's contract set forth his duties, which included management and supervision of the football team as well as "other duties . . . as may be assigned." The contract stated he could be terminated for just cause for a significant or repetitive violation of the duties set forth in the contract, as well as a "significant or repetitive violation of any law, regulation, rule, constitutional provision or bylaw of the institution."

Boulware was assigned the duty of serving as a Campus Security Authority ("CSA"), a person who assists the University in complying with The Clery Act, which tasks universities with reporting crimes and keeping a public crime log. As part of his training as a CSA, Boulware signed a letter that explained the types of crimes he was obligated to report.

> Our university has a responsibility to notify the campus community about any crimes which pose an ongoing threat to the community, and, as such, campus security authorities are obligated by law to report crimes to the university police department. Even if you are not sure whether an ongoing threat exists, immediately contact the university police department.

On 4 April 2019, two WSSU football players were involved in an altercation during practice and fought again in the weightroom after practice. Boulware intervened and sent the players home. Later that morning, he was informed the altercation had reignited in the players' dorm room.

On his way to the dorms, Boulware contacted the father of one of the students

and he was informed of a possibility a gun was involved. Boulware arrived at the dorm room with an assistant coach, engaged with the players, but did not contact WSSU Police. The players were asked if there was a gun in the room. All answered no and no formal search occurred. A bag with a substance, possibly marijuana, was found in the room, but no gun was seen. Boulware gave the bag to the student's father, who had arrived, and he disposed of it. Boulware attempted to inform the Athletic Director, but he could not reach him. He never informed the WSSU Police Department or the Director of Athletics, instead contacting only the Office of Student Conduct.

On 23 April 2019, Chancellor Elwood L. Robinson signed a Notice of Intent to Discharge Boulware for cause. The Chancellor listed Clause 5 of the Boulware's employment contract, WSSU EHRA Personnel Policies, Section 300.2.1 of the UNC Policy Manual and Section 611 of the Code of the University of North Carolina Board of Governors. Those policies list causes for discharge including, but not limited to, incompetence, unsatisfactory performance, neglect of duty, or misconduct that interferes with the capacity of the employee to perform effectively the requirements of his or her employment.

Boulware requested a hearing before the WSSU's EHRA Grievance Committee on 29 April 2019. The hearing was originally scheduled for 30 May 2019 but was continued until 23 July 2019 per Boulware's request. Boulware and WSSU were represented by counsel at the hearing.

After hearing evidence and testimony, the Grievance Committee recommended Boulware's termination be affirmed. The Grievance Committee drafted a decision letter, which outlined the termination procedures for Boulware. The procedures initially described and outlined in the letter applied to at-will employees, which did not include Boulware, who held a non-faculty ERHA position exempt from the State Human Resources Act. Consequently, the letter incorrectly stated it was being sent to WSSU's Board of Trustees, but the letter was instead re-routed to Chancellor Robinson when WSSU attorneys realized the procedures described in previous letters to Boulware were inconsistent with the UNC System's Code. The decision letter Boulware received outlined the wrong procedures, but the process was handled correctly and properly sent to Chancellor Robinson. Boulware's attorneys consented to the change in procedure via email. Chancellor Robinson adopted the Grievance Committee's recommendation on 22 November 2019.

On 3 December 2019, Boulware gave notice of appeal to WSSU's Board of Trustees. The Board of Trustees issued its Final Decision upholding his termination on 5 March 2020.

Boulware filed a Petition for Judicial Review requesting his termination of employment contract be reversed on 1 June 2020. He asserted the WSSU Board's Final Decision violated his constitutional protections, was made upon unlawful procedures, was affected by errors of law, was unsupported by substantial evidence, and constituted an abuse of discretion.

Boulware's First Petition for Judicial Review was heard on 3 September 2020. On 28 September 2020, Judge Gottlieb entered an order stating: "Boulware's grievance was properly referred to the Grievance Committee for an impartial, fact-finding hearing and the Grievance Committee's Recommendation was properly issued." However, the Court nevertheless concluded that, because of the procedural errors, the review and decision were:

> made upon unlawful procedure within the meaning of N.C. Gen. Stat § 150B-51(b)(3); and (ii) was affected by other error of law within the meaning of N.C. Gen. Stat § 150B-51(b)(4).

The court vacated the final decision of the Board of Trustees and remanded the matter for impartial review of the Grievance Committee's Recommendation with subsequent review, if necessary and requested, as provided by the UNC system's code.

The record, including the transcript from the Committee's hearing, was reviewed by Dr. Kimberly van Noort, Senior Vice President for Academic Affairs and Academic Officer for The University of North Carolina System. Dr. van Noort issued a decision on 15 December 2020 agreeing with the Grievance Committee's recommendation to terminate Boulware's contract and employment. Boulware responded by submitting a notice of appeal to the WSSU Board of Trustees.

WSSU's Board of Trustees unanimously affirmed Dr. van Noort's decision on 7 May 2021. Board Chair Harris and the original board attorney did not participate

in the appeal, due to concerns raised by Boulware.

Boulware filed a Second Petition for Judicial review on 7 June 2021 based upon the same contentions from the First Petition: asserting violations of constitutional provisions; unlawful procedures; errors of law; lack of substantial evidence; and, abuse of discretion. On 21 July 2021, Boulware requested Judge Gottlieb to rule upon unresolved issues from the First Petition. After this hearing, Judge Gottlieb declined to rule on the First Petition, ruling any unresolved issues from the First Petition were intrinsically intertwined with the issues raised in the Second Petition. Anything not specifically addressed in the prior order should be addressed in the Second Petition.

The case was heard on 11 January 2022. Judge Morgan issued his ruling, consolidating both the First and Second Petitions, affirming the final decision of the WSSU Board of Trustees, and denying all relief for Boulware on 31 January 2022.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III. Issues

Boulware argues the Final Decision to terminate his employment was not supported by substantial evidence because all decisions were based on a misapprehension of law.

Boulware also argues that the trial court erred as a matter of law because the WSSU changed its justification for dismissing Boulware's appeal *post hoc* after the case was remanded for impartial review. Boulware lastly contends the conclusions

of law are not supported by proper findings of fact because the substantive findings are mere recitations of evidence.

## IV.    Standard of Review

This Court examines the trial court's order for errors of law by completing two steps: "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994).

The trial court's review of the issues was governed by N.C. Gen. Stat. § 150B-51 which reads in part:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> . . .
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted [ ]
>
> . . .
>
> (c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to . . . subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard

of review.

N.C. Gen. Stat. § 150B-51(b)-(c) (2021).

Under the whole record test, "if the agency's findings are supported by substantial evidence, they must be upheld." *Sack v. N.C. State Univ.*, 155 N.C. App. 484, 491, 54 S.E.2d 120, 127 (2002). Substantial evidence is "relevant evidence a reasonable mind might accept as adequate to support a conclusion." *In re Denial of NC Idea's Refund*, 196 N.C. App. 426, 433, 675 S.E.2d 88, 94 (2009) (internal citations and quotations omitted).

## V.     Misapprehension of Law

Boulware argues the Final Decision to terminate his employment was not supported by substantial evidence because all decisions were based upon a misapprehension of The Clery Act. 20 U.S.C. § 1092(f) (2018) (tasking universities with reporting crimes and keeping a public crime log). He argues WSSU relied upon a misapprehension of The Clery Act as a basis for their argument against him, and substantial evidence does not exist to support the Board's decision. *Id.*

Substantial evidence tends to show Boulware engaged in a significant violation of his assigned contractual duties. Boulware signed his CSA training letter on 7 November 2019 and acknowledged his awareness and understanding of his duty to *immediately* report any on-going threats to the university's police department even if unsure whether an on-going threat existed.

Boulware testified he was aware of the possibility of a gun being involved in

the altercation between his players, yet instead of contacting law enforcement, he engaged with numerous people, including the agitated players and the father of one of the players inside the dorm for over two hours. Despite being made aware of the potential presence of a gun, Boulware never searched for one nor informed university police of this allegation. This testimony alone is a substantial violation, and his failure to comply risked serious harm or even death of students, staff, or the public.

Clear and substantial evidence of a violation of Boulware's contractual obligations was presented and substantiated his termination.

## VI. *Post Hoc* Change in Justification

Boulware argues that the trial court erred as a matter of law because WSSU changed its justification for dismissing Boulware *post hoc* after the case was remanded for impartial review. He asserts the initial focus to justify the termination of his contract was a violation of The Clery Act, but when Judge Gottlieb remanded for an impartial review, WSSU utilized a different theory.

The initial letter of termination to Boulware from 25 April 2019 was introduced at trial. In the opening sentences, the letter notifies the intent to dismiss based on "WSSU EHRA Personnel Policies, Section 300.2.1 of the UNC Policy Manual and Section 611 of The Code of the University of North Carolina Board of Governors." The letter describes Boulware's failure to contact law enforcement and its potential impact on campus safety. All of these assertions allegedly occurred before any reference to The Clery Act. In the initial briefs to the Superior Court, WSSU asserted

Boulware was terminated for failure to fulfill both his contractual and legal obligations to notify university police officers of a serious safety concern. This assertion is consistent with Dr. Van Noort's impartial review after remand, as well as the Board of Trustee's decision, to unanimously uphold the review.

These documents from the hearings provide clear and substantial evidence WSSU had stated numerous grounds for Boulware's termination, beginning in the initial letter. WSSU consistently maintained these arguments throughout the multiple review levels, including the current appeal before this Court.

## VII. Findings of Fact

Boulware contends the conclusions of law are not supported by proper findings of fact because the substantive findings are mere recitations of evidence.

Judge Morgan's Findings of Fact utilizes direct quotes from testimony. Boulware does not identify any conflicts in the evidence or testimony, and he does not challenge the sufficiency of the evidence to support any specific Finding of Fact. A significant portion of the Findings of Fact Boulware cites as relying upon direct testimony are taken directly from Boulware's testimony, which neither side disputes. "Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show." *Moore v. Moore*, 160 N.C. App. 569, 572, 587 S.E.2d 74, 75 (2003) (internal quotations and citation omitted).

No conflicting evidence is shown, and Boulware does not contend the Findings of Fact are not supported by the evidence. This Court has previously stated where "[p]laintiff does not challenge any of the trial court's findings of fact as unsupported by the evidence[,]" the findings of fact "are binding on appeal." *Garrett v. Burris*, 224 N.C. App. 32, 34, 735 S.E.2d 414, 416 (2012). Without conflicts in the Findings of Fact, and no contention the Findings of Fact are not supported by competent evidence, Boulware's argument is overruled.

## VIII. Conclusion

Boulware's argument asserting the Final Decision to terminate his employment contract was not supported by substantial evidence, due to a misapprehension of The Clery Act, fails. Boulware's clear violation of his employment contract created grounds for termination whether or not The Clery Act was asserted as a ground.

Boulware's argument WSSU changed its justification for termination midway through the legal process and reviews also fails. Documents entered at trial provide clear and substantial evidence to support WSSU had stated multiple grounds for Boulware's termination, not solely his violation of The Clery Act. These factors are found in the initial termination letter, and WSSU consistently maintained these arguments throughout the multiple levels of review.

Boulware's challenges to the substantive findings as mere recitations of evidence and the purportedly unsupported conclusions of law are without merit.

Boulware fails to identify any conflicts in the evidence or testimony and does not challenge the sufficiency of the evidence as not supporting any specific findings of fact. The Findings of Fact are binding upon appeal. *Moore,* 160 N.C. App. at 572, 587 S.E.2d at 75; *Burris*, 224 N.C. App. at 34, 735 S.E.2d at 416. These findings of fact support the conclusions of law. The order appealed from is affirmed. *It is so ordered.*

AFFIRMED.

Judge MURPHY and Judge STADING Concur.