Opinion issued August 6, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00109-CV

_____

**ROBERT FINCH II, Appellant**

**V.**

**ANGELA STEGMAN, Appellee**

---

**On Appeal from the 387th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 17-DCV-242295**

---

## MEMORANDUM OPINION

Appellee, Angela Stegman, sued appellant, Robert Finch II, for divorce and asserted a claim for reimbursement. Finch answered, filed a counterpetition for divorce claiming that the parties had been informally married in 1998, prior to their formal marriage in 2009, and asserted a counterclaim for reimbursement. The

parties' competing reimbursement claims concerned two houses purchased in Stegman's name in 1998 and 2007. After a bench trial, the trial court ruled that Finch and Stegman were married in 2009, denied Finch's claim that the parties were informally married before 2009, and confirmed that the houses were Stegman's separate property. The final divorce decree awarded Finch a portion of Stegman's retirement accounts and denied the parties' competing reimbursement claims. On appeal, Finch challenges: (1) the factual sufficiency of the evidence supporting the trial court's finding that no informal marriage existed before 2009; (2) the trial court's denial of Finch's reimbursement claim; and (3) the trial court's division of the parties' retirement accounts.

We affirm.

## Background

Finch met Stegman in 1985 while they both lived in Michigan.[1] They began dating in 1992 and Stegman moved in with Finch in 1993. Finch testified that he gave Stegman a ring in 1993 and asked her, "Would you be with me" or "Would you be my wife" while sitting on a couch at his parents' house in Michigan, and Stegman responded, "I'd love to be with you." Finch testified that he believed the parties were

---

[1] When, as here, an appellee does not file a brief, the appellate court may accept any factual statement made in the appellant's brief as true. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the fact stated [in the appellant's brief] unless another party contradicts them. The statement [of facts] must be supported by record references.").

informally married until he subsequently learned that Michigan does not recognize common-law marriage.

In 1998, the parties decided to move to Texas for a warmer climate and to be near Finch's two children from a previous marriage. Finch wanted to buy a house in Texas and he was unemployed at the time, so he came to Texas before Stegman to look for a house. He found one in Harris County that he intended to buy, but he was not approved for a loan. Stegman was approved for a loan, and she used some of the proceeds from the sale of her Michigan house for the down payment. Finch also sold his house in Michigan and received "[a]bout 25–, 26,000 [dollars] for sure," which he contributed to the purchase of the Harris County house. Finch signed the deed of trust in Stegman's name "as [Stegman's] agent and attorney-in-fact." The deed of trust listed Stegman as "an unmarried woman" and the sole borrower on the loan. The Harris County house was conveyed solely to Stegman.[2]

Finch testified that he and Stegman agreed to be informally married again after moving to Texas but before buying the Harris County house in 1998. Finch did not offer details of the agreement to be married, but he answered "yes" when his counsel asked if he and Stegman "agree[d] to be married in Texas in 1998" and if they lived together afterwards. Finch testified that he did not "think [he and

---

[2]    The record does not include the warranty deed for the Harris County house.

Stegman] really even brought it up. [Finch] thought [they] were married and since [they] lived together here in Texas."

In 2007, Finch and Stegman decided to buy a second, larger house in Fort Bend County because Stegman's mother had moved in with them. Finch did not qualify for the mortgage loan because of identity-theft issues, so Stegman obtained a loan in her name and the Fort Bend County house was conveyed to her "as an unmarried person." The loan on the Fort Bend County house was refinanced in 2010, after the parties formally married, but Stegman testified that Finch was not included as a borrower on the refinanced loan. The loan was again refinanced in 2017, listing both Stegman and Finch, as "wife and husband," together as borrowers for the first time. Stegman did not sell the Harris County house, and she owned it at the time of the underlying divorce proceedings.

The parties were married in a formal ceremony in Texas on July 8, 2009, and they never had children together. On June 1, 2017, Stegman filed an original petition for divorce on the grounds of insupportability and cruelty. *See* TEX. FAM. CODE ANN. §§ 6.001, 6.002. She asserted a claim for reimbursement and asked for a disproportionate share of the parties' community estate based on her reimbursement claim and on Finch's alleged fault in breaking up the marriage and wasting community assets. She also asserted a claim for intentional infliction of emotional

4

distress based on a 2011 motor-vehicle accident that Finch had allegedly caused while driving alone after using heroin, which Finch denied.

Finch answered and generally denied Stegman's allegations. He filed a counterpetition for divorce, claiming that the parties were informally married in September 1998. He also asserted a counterclaim for reimbursement.

In December 2018, the trial court held a two-day bench trial. Stegman admitted that she and Finch had lived together from 1993 through the time of trial but denied that they had agreed to be married before 2009. She supported her testimony with the parties' marriage certificate. Stegman admitted that Finch had given her a ring in Michigan, but she denied that she had agreed to be married to Finch. She testified that she did not wear the ring because she did not like it, and she explained that "[Finch] said it was a cubic zirconia, that we would get something better when we could afford it. I – I've never worn it, and he knows that."

Stegman also produced evidence proving that she purchased the Harris County and Fort Bend County houses in her name alone prior to the parties' marriage. She produced the 1998 deed of trust for the Harris County house, which listed the borrower as "Angela Stegman, an unmarried woman" and showed that Finch had signed the documents as Stegman's "agent and attorney-in-fact," not as her husband. She also produced a 2018 printout from the Harris County Appraisal District website listing Stegman as the sole owner of the Harris County house. To

5

support her ownership of the Fort Bend County house, Stegman produced the general warranty deed conveying it to "Angela J. Stegman, an unmarried person" in November 2007, a printout from the Fort Bend County Tax Office website listing only Stegman's name in relation to ownership of the house, and a deed of trust for a refinance loan on the house that listed Stegman and Finch, "wife and husband," as borrowers for the first time in 2017.

Stegman asked the court to award her a disproportionate share of the community assets. She testified that she consistently maintained employment during the parties' 25-year relationship, including working two jobs for 13 years, and she had always contributed to her retirement accounts. Finch, she testified, was often unemployed. Stegman testified about her retirement accounts and other financial information, and she produced supporting evidence, including the account balances. On cross-examination, Stegman admitted that, when the parties began speaking about divorce, "[Finch] wanted the [Harris County house], and I felt that we both paid for this home so we should sell the home. I should get half. [Finch] should get the other [half]." She also admitted that the parties "always went pretty much half on everything" and that Finch had "helped with house payments . . . ." Finch testified that he contributed "[f]ifty percent or better" to the mortgage payments on the Harris County house and that he maintained the house and the pool. On cross-examination, Finch testified that the trial court had entered an agreed temporary order in

6

November 2017 for him to pay $1,188 per month to Stegman for his share of the household expenses through the time of trial while the parties lived together. Finch admitted, however, that he had only paid $600 per month.

During his case-in-chief, Finch testified that, prior to the parties' formal marriage, he believed that he and Stegman were married and that he "always introduced [Stegman] as [his] wife, and she introduced [him] as her husband," including to Kathleen and Jerry Johnson, who were "neighbors down the street" but who were not called to testify at trial, and to family members, including his daughter, Tiffany Finch. Finch also testified that his son called Stegman "mom" and that Stegman would pick up his kids from school, although he could not say whether the school listed Stegman as his wife in its records. Finch's son did not testify at trial. Finch testified that his mother and Stegman exchanged cards on Mother's Day, but he denied that Stegman "formally" called his mother "mom." Finch testified that he introduced Stegman as his wife to coworkers at a Christmas party in 2003 or 2004.

On cross-examination, Finch's counsel asked Stegman if she had used the name "Angie Finch" on a credit card in 2007, two years before the parties' formal marriage, and Stegman admitted that she had used the name, but she was not clear

about the date.[3] Finch did not testify about Stegman's use of his last name on tax returns, but he did testify that Stegman had "always done the tax returns." When Stegman was asked on cross-examination, "Who files the taxes for Mr. Finch," she responded, "With a joint signature. We both do." The only documentary evidence in the record concerning the parties' taxes is an illegible photocopy of two 1040 forms for tax years 2016 and 2017, which were attached to Stegman's financial statement filed with the court.

Finch's only documentary evidence consisted of affidavits that he had submitted regarding theft of his identity, which had prevented him from obtaining approval on the mortgage loan for the Fort Bend County house in 2007.

Finch called his daughter, Tiffany Finch, to testify about the parties' marriage. Tiffany testified that she did not want to visit her father often when she was young because she "didn't really have a good relationship with [Stegman]." Tiffany testified that she "didn't know that [Finch and Stegman] weren't legally married until they told me that they got married" in 2009. She said that she lived with her grandparents in Michigan and she occasionally would visit her father and Stegman when they lived in Michigan. She testified that her grandparents referred to Stegman

---

[3]    Stegman objected to a four-page document relating to this credit card that Finch produced late, and the trial court sustained the objection. Finch does not challenge this ruling on appeal.

8

as Finch's wife, so Tiffany was "under the impression" that they were married. Tiffany recalled that Finch introduced Stegman to others as his wife, but she could not remember whether Stegman was present during those introductions. The first time Tiffany remembered Stegman's being present when she was introduced as Finch's wife was when Finch, Stegman, and Tiffany went to Kansas to visit an uncle sometime around 2001. Tiffany also testified that, when Finch introduced Stegman to Tiffany's mother, Finch referred to Stegman as his wife, but on further questioning Tiffany could not recall whether Stegman was present when Finch referred to her as his wife.

In a letter to the parties after trial, the trial court "[found] that the date of the marriage [was] July 8, 2009" and denied Finch's request to find that an informal marriage existed before then. The final divorce decree granted the parties' divorce petitions on the ground of insupportability. The decree confirmed that the Harris County and Fort Bend County houses were Stegman's separate property. The decree divided the community estate and awarded Finch more than $42,000 of Stegman's retirement funds. The decree did not otherwise list the value of each party's portion of the community estate. The decree did not expressly mention the parties' competing reimbursement claims, but it denied all requested relief that was not expressly granted in the decree.

Finch appealed.

## Informal Marriage

In his first issue, Finch challenges the factual sufficiency of the evidence supporting the trial court's finding that "the date of the [parties'] marriage [was] July 8, 2009[,] and the request to find a common[-]law marriage is denied." Finch argues that he and Stegman were married before buying the Harris County house in 1998 or alternatively before buying the Fort Bend County house in 2007, making the houses community property, not Stegman's separate property. Finch argues that a lack of evidence "of infidelities or separation between the parties in 25 years [made] the informal marriage present, immediate and permanent," although he concedes that "[Stegman] acknowledged all elements of a common[-]law marriage except an intent to be married." Finch argues that he proved Stegman's intent to be married through his and his daughter's testimony.

### A.    Standard of Review

In a bench trial, the trial court's findings of fact have the same weight as a jury verdict, and we review the factual sufficiency of the evidence to support the findings using the same sufficiency standards as when we review a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Thompson v. Smith*, 483 S.W.3d 87, 93 (Tex. App.—Houston [1st Dist.] 2015, no pet.). When challenged, a trial court's findings of fact are not conclusive if, as here, there is a complete

10

reporter's record on appeal. *Guimaraes v. Brann*, 562 S.W.3d 521, 548–49 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

In a factual sufficiency review, we consider all the evidence for and against the challenged finding, and we set aside the finding only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Id.* at 549 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses.") (citing *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). The factfinder may resolve inconsistencies in witness testimony, regardless of whether such inconsistencies result from contradictory accounts of multiple witnesses or from internal contradictions in the testimony of a single witness. *Guimaraes*, 562 S.W.3d at 549 (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986), and *Repub. Petrol. LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). The factfinder may also choose to believe one witness over another. *City of Keller*, 168 S.W.3d at 802. In conducting our factual sufficiency review, we may not substitute

our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (citing *Ford Motor Co. v. Pool*, 715 S.W.2d 629, 635 (Tex. 1986)).

## B.    Governing Law

A valid informal marriage consists of three elements: (1) the parties agreed to be married; (2) after the agreement, the parties lived together in Texas as husband and wife; and (3) the parties represented to others in Texas that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2); *Claveria's Estate v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981); *Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). "The statutory requirement of 'represented to others' is synonymous with the judicial requirement of 'holding out to the public.'" *Eris v. Phares*, 39 S.W.3d 708, 714–15 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (quoting *Winfield v. Renfro*, 821 S.W.2d 640, 648 (Tex. App.—Houston [1st Dist.] 1991, writ denied), and *In re Giessel*, 734 S.W.2d 27, 30 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.)). "An informal marriage does not exist 'until the concurrence of all three elements.'" *Nguyen*, 355 S.W.3d at 88–89 (quoting *Eris*, 39 S.W.3d at 713). The existence of an informal marriage is a fact question, and the party seeking to establish the marriage bears the burden of proving all three elements by a preponderance of the evidence. *Nguyen*, 355 S.W.3d at 88 (citation omitted).

12

To establish an agreement to be married, the evidence must show that the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife. *Eris*, 39 S.W.3d at 714. An agreement to be married may be established by direct or circumstantial evidence or conduct of the parties. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993); *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). A party's testimony may constitute direct evidence that the parties agreed to be married. *Eris*, 39 S.W.3d at 714.

An agreement to be married cannot be inferred from evidence that the parties merely cohabitated and represented to others that they were married, although this evidence may be circumstantial evidence of an agreement to be married. *Russell*, 865 S.W.2d at 933 ("A finding that there is legally and/or factually sufficient evidence of cohabitation and public representation will not necessarily constitute legally and/or factually sufficient evidence of an agreement to be married. There must also be legally and/or factually sufficient evidence of an agreement to be married . . . ."). However, isolated references alone are not evidence of holding out. *Lee v. Lee*, 981 S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing *Ex parte Threet*, 333 S.W.2d 361, 364 (Tex. 1960)); *Giessel*, 734 S.W.2d at 31. A party's signing of a warranty deed for disputed property as a single or unmarried person in connection with its transfer is "particularly significant" to the

element of holding out. *See Eris*, 39 S.W.3d at 708. Filing joint income tax returns can also be probative of an agreement to be married. *See Flores v. Flores*, 847 S.W.2d 648, 652 (Tex. App.—Waco 1993, writ denied) ("[A] forthright assertion of marriage with the consequences of liability—such as . . . the filing of a[] joint income tax return—may be far more probative of such an agreement.").

## C.    Analysis

At trial, Finch testified that he asked Stegman, "Would you be with me" or "Would you be my wife," while they sat on his parents' couch in Michigan in 1993, and that Stegman responded, "I'd love to be with you." Finch testified that he believed that he and Stegman were married. Finch answered "yes" when his counsel asked if he and Stegman "agree[d] to be married in Texas in 1998," but he did not offer any details of the agreement. Finch testified that he intended to be married all the time, not just some of the time, which he considered permanent. Finch also conceded that his belief that he and Stegman were informally married in Michigan was mistaken because he subsequently learned that Michigan does not recognize common-law marriage. Stegman denied that she and Finch agreed to be married before 2009, and she introduced the parties' marriage certificate showing they formally married in July 2009. Although she acknowledged that Finch had given her a ring in Michigan, Stegman denied wearing it, saying that she did not like it, that it was made of cubic zirconia, and that Finch had told her that he would buy something

14

nicer when he could afford it. Although the parties' testimony regarding an agreement to be married is inconsistent, the factfinder was the sole judge of the witnesses' credibility and the weight to be given their testimony, and the factfinder could choose to believe Stegman over Finch. *See City of Keller*, 168 S.W.3d at 802, 819; *Guimaraes*, 562 S.W.3d at 549.

Finch also argues that circumstantial evidence showed the parties' agreement to be married, including that the parties cohabitated together and held themselves out as husband and wife to others. *See Russell*, 865 S.W.2d at 933 (providing that agreement to be married cannot be inferred from evidence parties cohabitated and held themselves out as married, although such evidence may be circumstantial evidence of agreement to be married). At trial, the parties did not dispute that they cohabitated together from 1993 until trial in 2018. Relying solely on his trial testimony, Finch argues that, in addition to cohabitating, the parties held themselves out as married to others, including to their neighbors, Jerry and Kathleen Johnson, and various family members, including his son, whom Finch testified called Stegman "mom." Finch argues that his mother and Stegman exchanged cards on Mother's Day, but he denied that Stegman "formally" called his mother "mom." Finch testified at trial that he introduced Stegman as his wife to his coworkers at a work Christmas party in 2003 or 2004. He also testified that Stegman picked his children up from school, although he could not say whether the school's records

15

listed Stegman as his wife and he did not testify to the time period in which this occurred. Finch did not support his testimony with any other evidence, and the trial court, as the sole judge of the witnesses' credibility and the weight to be given their testimony, could have chosen to not believe his testimony. *See City of Keller*, 168 S.W.3d at 802, 819; *Guimaraes*, 562 S.W.3d at 549.

Finch also relies on the trial testimony of his daughter, Tiffany, to show that the parties agreed to be informally married. Tiffany testified that she did not know the parties were not legally married until they told her that they had married in 2009. Tiffany testified that her grandparents referred to Stegman as Finch's wife, so she was "under the impression" that they were married. Tiffany further testified that, after the parties moved to Texas, Finch introduced Stegman to Tiffany's mother and referred to Stegman as his wife, although Tiffany could not recall whether Stegman was present when Finch referred to her as his wife. Tiffany recalled that the earliest time Stegman was present when Finch introduced her as his wife was when the family visited an uncle in Kansas sometime around 2001. Tiffany's testimony does not conclusively show that Stegman, while in Texas, represented to others that she and Finch were married or that Stegman was present while Finch did so in Texas. *See, e.g.*, *Eris*, 39 S.W.3d at 714 ("To satisfy this element of common-law marriage, parties must, *in Texas*, have represented to others that they were married.") (emphasis added) (citing TEX. FAM. CODE ANN. § 2.401(a)(2)). Tiffany testified

16

broadly about her father's relationship with Stegman and she conceded that she did not visit Finch often during the relevant time period. To the extent Tiffany's testimony can be construed as evidence that Stegman held herself out as Finch's wife prior to the parties' formal marriage in 2009, the trial court was the sole judge of Tiffany's credibility and the weight to be given her testimony, and it could have chosen not to believe her. *See City of Keller*, 168 S.W.3d at 802, 819; *Guimaraes*, 562 S.W.3d at 549.

Finch further argues that the parties filed joint tax returns and that Stegman began using Finch's last name in 2007, which he contends shows the parties' agreement to be married. However, the record contains no documentary evidence supporting these claims. *See Russell*, 865 S.W.2d at 933 (holding that legally and factually sufficient evidence must support each element of informal marriage). At trial, Finch's counsel asked Stegman, "Who files the taxes for Mr. Finch?" Stegman responded, "With a joint signature. We both do." Stegman was not asked to explain her answer and she did not testify what tax year, if any, the parties filed joint tax returns. *See Flores*, 847 S.W.2d at 652 ("[A] forthright assertion of marriage with the consequences of liability—such as . . . the filing of a[] joint income tax return—may be far more probative of such an agreement [to be married]."). The only record evidence concerning taxes is an illegible photocopy of two 1040 forms for tax years 2016 and 2017, which is not sufficient circumstantial evidence to show that Stegman

17

had agreed to be married to Finch prior to their formal marriage in 2009. Likewise, the only evidence that Stegman used Finch's last name in 2007 is Stegman's testimony on cross-examination that the last four digits of a credit account from the time period "d[id] seem familiar" and that she had used the name "Angie Finch" on one credit card two years before her formal marriage. Finch offered no testimony about Stegman's use of his last name. Stegman's testimony that she used Finch's last name on one credit card, without more, is insufficient to show she held herself out as Finch's wife, and it is therefore insufficient circumstantial evidence of Stegman's agreement to be informally married to be Finch. *See Lee*, 981 S.W.2d at 907; *Russell*, 865 S.W.2d at 933.

To support her claims at trial, Stegman introduced the parties' marriage certificate, which showed that the parties were formally married in July 2009. She also produced a deed of trust for the 1998 purchase of the Harris County house, which listed her as "an unmarried woman" and the sole borrower on the mortgage loan and showed that Finch signed the deed of trust for Stegman as her agent and attorney-in-fact, not as her husband.[4] A property tax printout from 2018 listed Stegman as the sole owner of the Harris County house. The general warranty deed

---

[4] We note that if Finch believed he was married to Stegman but swore before a notary public that Stegman was "an unmarried woman," he committed perjury, a Class A misdemeanor. *See Eris v. Phares*, 39 S.W.3d 708, 716 n.3 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing TEX. PENAL CODE ANN. § 37.02).

for the Fort Bend County house shows it was conveyed solely to Stegman as "an unmarried person" in November 2007, which is nine years after Finch claims that the parties were informally married. *See Eris*, 39 S.W.3d at 708 (finding that party's signing of warranty deed for disputed piece of property as "a single person" in connection with its transfer was "particularly significant" to element of holding out). This evidence contradicted Finch's testimony that the parties had agreed to be married before buying the Fort Bend County house in 2007.

Considering all the evidence for and against the trial court's finding that no informal marriage existed, we conclude that the finding is not so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *See Guimaraes*, 562 S.W.3d at 549. Most of the evidence supporting Finch's claim that the parties agreed to be informally married before 2009 was testimonial in nature, and the trial court was the sole judge of the witnesses' credibility and the weight to be given their testimony, and it could have chosen to believe Stegman over Finch and his daughter. *See City of Keller*, 168 S.W.3d at 802, 819; *Guimaraes*, 562 S.W.3d at 549. As the proponent of an informal marriage, Finch had the burden to prove that the parties were informally married, but he offered no direct evidence or compelling circumstantial evidence supporting an agreement to be married before the parties bought the Fort Bend County house in 2007. *See Russell*, 865 S.W.2d at 933; *Nguyen*, 355 S.W.3d at 88. We conclude that the evidence supports the trial court's

19

finding that the parties did not agree to be informally married before their formal marriage in July 2009. *See Guimaraes*, 562 S.W.3d at 549 ("In a factual sufficiency review, we consider all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."). We therefore hold that the evidence is factually sufficient to support the trial court's finding.[5] *See id.*

We overrule Finch's first issue.

## Reimbursement

In his second issue, Finch challenges the trial court's denial of his claim for reimbursement for money he paid towards the Harris County house and for half of its equity.

### A.    Standard of Review

The standard of review for property division issues, including reimbursement, in family law cases is abuse of discretion. *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1982); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974); *Raymond v. Raymond*, 190 S.W.3d 77, 82 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998)). "A trial court abuses its discretion

---

[5]    Because the evidence is factually sufficient to support a finding that the parties did not agree to be married, we need not analyze whether the evidence is factually sufficient to negate the other elements of the claim of informal marriage on which Finch also bore the burden of proof. *See Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

when a 'decision is arbitrary, unreasonable, and without reference to guiding principles.'" *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (citation omitted). If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.)).

## B.    Governing Law

A party may assert a claim for reimbursement when the funds or assets of one marital estate are used to improve another marital estate without itself receiving some benefit. TEX. FAM. CODE ANN. § 3.402(a); *Vallone*, 644 S.W.2d at 458. A trial court must determine whether to recognize a party's claim for reimbursement after taking into account all the relative circumstances of the spouses and, if so, it must order a "just and right" division of the claim for reimbursement, having due regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.007. The trial court's discretion in evaluating a claim for reimbursement is as broad as its discretion in making a just and right division of the community estate. *Alsenz*, 101 S.W.3d at 655 (citing *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988)). A party claiming the right of reimbursement must plead and prove that the expenditures and improvements were made and that they are reimbursable. *Vallone*, 644 S.W.2d at 459; *Barras v. Barras*, 396 S.W.3d 154, 173–74 (Tex. App.—

21

Houston [14th Dist.] 2013, pet. denied). The rule of reimbursement is purely equitable, and reimbursement claims may be offset against each other if the trial court determines it is appropriate. TEX. FAM. CODE ANN. § 3.402(b); *Vallone*, 644 S.W.2d at 458.

## C.  Analysis

Finch testified at trial that he spent about $25,000 or $26,000 towards the purchase of the Harris County house and that he contributed equally to the household expenses, but he offered no documentary evidence to support his testimony. Stegman conceded that Finch had paid money towards the purchase of the Harris County house in 1998, but she could not recall how much he had paid. She also conceded that Finch had contributed to the mortgage and household expenses, but she did not say how much he had contributed. In a temporary order entered during the pendency of the divorce proceedings, the trial court ordered Finch to pay $1,188 per month to Stegman for household expenses. On cross-examination, Finch admitted that he only paid half of this amount.

Finch argues on appeal that Stegman testified that the parties paid for the Harris County house equally and that Finch was entitled to half. However, the testimony that Finch refers to concerns discussions between Stegman and Finch when they first began discussing divorce, not to Stegman's belief at the time of trial. To the contrary, Stegman asked for a disproportionate share of the community estate

and for reimbursement. The factfinder was the sole judge of inconsistencies in witness testimony and it could believe or disbelieve any witness. *City of Keller*, 168 S.W.3d at 802, 819; *Guimaraes*, 562 S.W.3d at 549. We may not substitute our judgment for that of the factfinder. *City of Keller*, 168 S.W.3d at 802, 819; *Jackson*, 116 S.W.3d at 761; *Guimaraes*, 562 S.W.3d at 549.

Finch offered no evidence to meet his burden to prove the amount of expenditures that he spent or to prove that such expenditures were reimbursable. *See Vallone*, 644 S.W.2d at 459; *Barras*, 396 S.W.3d at 173–74. We conclude that some evidence of a substantive and probative character exists to support the trial court's denial of Finch's reimbursement claim. *Ayala*, 387 S.W.3d at 726. We therefore hold that the trial court did not abuse its discretion.

We overrule Finch's second issue.

**Division of Retirement Assets**

Finch's third issue mostly repeats his arguments regarding the trial court's denial of his reimbursement claim, which we decided above. However, Finch also briefly mentions that Stegman presented "conflicting evidence" to the trial court that "confused the court as well as [Stegman], thereby causing confusion and uncertainty as to [Finch's] interest in [Stegman's] retirement accounts." Finch offers no further argument and he does not cite any authority. A party's brief must include "a clear and concise argument for the contentions made, with appropriate citations to

23

authorities and to the record." *Eagle Oil & Gas Co. v. Shale Exploration, LLC*, 549 S.W.3d 256, 286 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (quoting TEX. R. APP. P. 38.1(i)). A failure to cite any authority in support of an issue raised waives that issue. *Id.* "We will not independently research the law and analyze the record to assess the merit of an inadequately briefed appellate issue." *Id.* (citations omitted). We hold that Finch has waived this argument for failure to brief it.

We overrule Finch's third issue.

## Conclusion

We affirm the judgment of the trial court. We dismiss any pending motions as moot.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Kelly, and Landau.

Landau, J., concurring without opinion.